UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| HILDA GREEN, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) No. 3:17-CV-219 |
| v. | ) |
| | ) Judge Collier |
| CAMPBELL COUNTY, TENNESSEE, and | ) Magistrate Judge Guyton |
| ALENE BAIRD, in her official and | ) |
| individual capacities, | ) |
| | ) |
| *Defendants.* | ) |

# M E M O R A N D U M

Before the Court is the motion for summary judgment of Defendant Campbell County, Tennessee, and Defendant Alene Baird, in her official capacity (collectively with Campbell County, the "County"), on the claims of Plaintiff, Hilda Green, for employment discrimination. (Doc. 16.) Also before the Court is the motion for summary judgment of Baird, in her individual capacity, on Plaintiff's claims against her for intentional infliction of emotional distress and malicious prosecution.[1] (Doc. 15.) Plaintiff responded in opposition to both motions. (Docs. 27, 28.) Finally, before the Court is Plaintiff's motion for leave to file a declaration of a third party in support of her response to the County's dispositive motion. (Doc. 31.) No Defendant has responded to Plaintiff's motion.

---

[1] Baird describes her motion as one to dismiss under Rule 12 or for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. 15 at 3.) She does not explain the standard applicable to either motion, nor does she specify which of her arguments should be considered under which rule. The two sections of her motion directed to claims against Baird assert Plaintiff "has not come forward with sufficient evidence" of an element of intentional infliction of emotional distress (*id.* at 3) and "cannot show this Court" an element of malicious prosecution (*id.* at 5). The Court construes Baird's motion as a motion for summary judgment because Baird couches the relevant parts of her motion as addressing the evidence, rather than the sufficiency of the complaint.

The Court will **DENY** the County's motion for summary judgment (Doc. 16). The Court will **GRANT IN PART and DENY IN PART** Baird's motion for summary judgment in her individual capacity (Doc. 15). The Court will **DENY AS MOOT** Plaintiff's motion to file a third-party declaration (Doc. 31).

I.     <u>**BACKGROUND**</u>[2]

Plaintiff began working for the Campbell County Clerk's Office in 1991 as a deputy clerk. She was approximately sixty years old at the time of the events relevant to this lawsuit. She was diagnosed with Crohn's Disease in 1998, had a colostomy in the early 2000s, and has generalized anxiety disorder. (Doc. 28-1 [Pl. Decl.] ¶ 2.) When active, these conditions interfere with her ability to concentrate, affect her digestive functions, and cause physical pain. Stress can exacerbate the symptoms of both conditions. (*Id.* ¶ 14.) She typically can perform her work duties without any accommodation, however. (*Id.* ¶ 2.)

---

[2] Unless otherwise noted, where the facts set out by the parties are disputed, the Court has viewed the evidence in the light most favorable to Plaintiff and drawn all reasonable inferences in her favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff argues for an additional degree of skepticism as to Baird's factual assertions because, according to Plaintiff, Baird has committed perjury. (Doc. 28 at 7.) Plaintiff points to contradictions between different instances of Baird's sworn statements about whether she ever called Plaintiff names, whether she touched Plaintiff's nose, and which of the two was trying to call the police on August 23, 2016, as well as to contradictions between Baird's sworn statements and various documents. (*Id.* at 7–9.) Plaintiff acknowledges the Court cannot weigh credibility, but she argues "this is more than simply weighing credibility," in that the jury will view everything through the lens of Baird's alleged untruthfulness. (*Id.* at 9.) Plaintiff offers no authority for her contention that the Court should consider Baird's alleged perjury in deciding the pending motions. The Court concludes it does not have the authority to weigh Baird's credibility in deciding Defendants motions for summary judgment, and the Court will not do so.

Baird was elected County Clerk for Campbell County in 2014. Plaintiff was one of three deputy clerks who stayed on when Baird took office. (*Id.* ¶ 3.) In or around early 2015, Baird assigned Plaintiff and one of the other holdover employees, Beverly Hall, to work in the LaFollette branch of the Clerk's Office, rather than at the main branch in Jacksboro.[3] (*Id.* ¶¶ 3, 18.) Plaintiff's job duties nevertheless included going to the Jacksboro office every day to deliver paperwork.

In the spring of 2016, Baird began asking Plaintiff questions about Hall and Hall's job performance. (*Id.* ¶ 8.) Baird told Plaintiff that she had heard Hall was planning to run against Baird in the next election. (*Id.* ¶ 9.)

On May 26, 2016, Plaintiff and Hall had a problem with a customer's vehicle registration due to an issue with a state agency. Plaintiff called the Clerk's Office in Jacksboro to ask for Baird's guidance. Neither Baird nor her daughter was there.[4] Plaintiff then called the state agency directly, got the information she needed, and resolved the issue. (*Id.* ¶ 10.) The customer was upset about the length of time the process had taken and complained to Baird. (*Id.* ¶¶ 10–11.) Baird questioned Plaintiff and wanted her to support a write-up of Hall for the incident. Plaintiff

---

[3] The third holdover employee was Mary Heatherly. Plaintiff has moved for leave to file Heatherly's declaration late because Heatherly was on vacation when Plaintiff responded to the County's motion for summary judgment. (Doc. 31.) Plaintiff does not attach a copy of the declaration to her motion for leave. Based on Plaintiff's response to the County's motion for summary judgment, the declaration includes statements about Baird's harassment and termination of Heatherly, which Plaintiff alleges was similar to Baird's treatment of Plaintiff. (*See* Doc. 28 at 12–13.) Because the facts alleged in this portion of Plaintiff's response are not necessary to the Court's disposition of the County's motion for summary judgment, the Court will **DENY** Plaintiff's motion for leave (Doc. 31) as moot.

[4] The parties' briefs do not identify Plaintiff's daughter's position in the Clerk's Office.

refused, telling Baird that neither Hall nor anyone else had done anything wrong. A few minutes later, Baird gave Plaintiff a write-up for the incident. (*Id.* ¶¶ 11–12.) Baird would later state that Plaintiff did not do anything wrong by calling the state agency under these circumstances. (Doc. 28-2 [Baird Dep.] at 44.)[5]

This was the first time Plaintiff had been written up for anything in her career. (Doc. 28-1 [Pl. Decl.] ¶ 12.) After that day, Baird began criticizing Plaintiff, accusing her of mistakes she did not make, and asking her why she did not retire. (*Id.* ¶¶ 13, 17.) This worsened the symptoms of Plaintiff's Crohn's Disease and her anxiety disorder. (*Id.* ¶ 14.)

Baird instructed Plaintiff to report to the Jacksboro office to work on June 13, 2016. (*Id.* ¶ 18.) That morning, Baird told Plaintiff she would have to start doing driver's license renewals. (*Id.* ¶ 19.) Plaintiff agreed, but said she would have to be trained on the new driver's-license

---

[5] Baird testified as follows in her deposition:

> Q.　Did you have a problem that Ms. Green [Plaintiff] apparently called the state for clarification of this matter?
> A.　No.
> Q.　What was your objection, then? . . .
> A.　I mean, she could have called me instead of the State. I would have been a lot easier to have got in contact with instead of the State. Sometimes they put you on hold. I mean, she could have—I asked her, "Why didn't you call me?"
> ***
> Q.　. . . She didn't do anything wrong by calling the State; you just would have maybe preferred her handle it differently. Fair?
> A.　Yes.

(Doc. 28-2 [Baird Dep.] at 44.)

software that had been installed in Jacksboro during the time in which she had been assigned to LaFollete; driver's license renewals were not handled in LaFollette. (*Id.*)

Baird stood near Plaintiff most of the morning on June 13, criticizing her work. (*Id.* ¶ 21.) Baird asked Plaintiff why she did not retire and said a younger girl could do Plaintiff's job faster. Baird gave Plaintiff a write-up to sign regarding her mistakes, which Plaintiff said she would only sign under protest. (*Id.*) Plaintiff went to her doctor's office during her lunch hour on June 13 for physical pain and emotional distress. (*Id.* ¶ 22.) The doctor gave her an order for a medical leave from work. (*Id.*) Plaintiff then requested and received leave under the Family and Medical Leave Act (the "FMLA") beginning that day.

On June 17, 2016, four days after Plaintiff started her FMLA leave, Baird prepared and signed a form to reduce Plaintiff's pay by $5,000. The reduction was made effective June 11, 2016, six days earlier. The form stated the reduction was "based on less job duties." (Doc. 28-5.) Baird explained in her deposition that the reduced job duties to which she was referring related solely to Plaintiff's refusal to do driver's license renewals in Jacksboro on the morning of June 13, and admitted that Plaintiff had not been performing fewer job duties at any time before June 13. (Doc. 28-2 [Baird Dep.] at 45–47.) Plaintiff's declaration states she was not performing fewer job duties at any time before her termination. (Doc. 28-1 [Pl. Decl.] ¶ 18.)

Plaintiff returned from her FMLA leave on July 26, 2016. Baird immediately gave Plaintiff a write-up to sign for making mistakes. Plaintiff told Baird she did not make more mistakes than any other employee and accused Baird of retaliating against her. Baird suspended Plaintiff without pay later that same day. (*Id.* ¶ 24.)

Plaintiff's physical symptoms continued to worsen. She accordingly requested and received additional FMLA leave after her suspension without pay, with a scheduled date to return to work of Monday, August 22, 2016. (*Id.* ¶ 25.)

On Friday, August 19, Plaintiff submitted a written complaint against Baird for discrimination and harassment based on age and disability. (*Id.* ¶ 26.) Plaintiff mentioned, among other things, the reduction of her pay, threats of termination, false reprimands, and a fear of losing her job. Plaintiff delivered her complaint to the County Attorney, the County Mayor, the County Finance Director, and Baird. (Doc. 28-6.)

Plaintiff returned from FMLA leave on Monday, August 22. That morning, Baird told Plaintiff she had received more complaints about her and again asked her to sign a write-up, which Plaintiff refused to do. (Doc. 28-1 [Pl. Decl.] ¶ 27; Doc. 28-2 [Baird Dep.] at 50.) Baird threatened to make another cut in Plaintiff's pay. (Doc. 28-7.) Plaintiff asked to take the rest of the day as a vacation day. (Doc. 28-2 [Baird Dep.] at 50.)

On August 23, Plaintiff was working on mailings in the back of the Jacksboro office. (*Id.* at 49–50.) After Plaintiff returned from lunch, Baird went to the back to ask Plaintiff why the mailings were taking so long. (*Id.* at 50.) Baird told Plaintiff that Baird had never discriminated against or harassed her, and that Baird had trusted Plaintiff to go to the LaFollette office. (*Id.* at 51.) Referring to Plaintiff's written complaint of discrimination, Baird told Plaintiff that Plaintiff was a liar and a backstabber. (*Id.* at 59–60.) Plaintiff told Baird to leave her alone and that she was going to file a workers' compensation claim. (*Id.* at 51.) Plaintiff left the Clerk's Office and went to talk to the County Mayor at approximately 3:00 p.m. (Doc. 28-3 [Pl. Cl. Interv.] at 7, 9.)

When Plaintiff returned to the office around 3:30 p.m., Baird followed her to the back. (*Id.* at 8–9; Doc. 28-2 [Baird Dep.] at 51.) Baird told Plaintiff she was going to write her up; Plaintiff told Baird to leave her alone and let her finish her work. (Doc. 28-3 [Pl. Cl. Interv.] at 9; Doc. 28-2 [Baird Dep.] at 51.) Baird got very close to Plaintiff, put her finger in Plaintiff's face, and poked Plaintiff in the nose. (Doc. 28-3 [Pl. Cl. Interv.] at 9–10; Doc. 28-2 [Baird Dep.] at 52.) Plaintiff picked up the phone and told Baird she was calling the police. (Doc. 28-3 [Pl. Cl. Interv.] at 10; Doc. 28-2 [Baird Dep.] at 51.) Baird either grabbed Plaintiff's hand or pressed the receiver button to hang up the phone.[6] (Doc. 28-3 [Pl. Cl. Interv.] at 10; Doc. 28-2 [Baird Dep.] at 51.)

Plaintiff went to the front of the office to try to use a phone there. Baird followed her and pulled the phone cord out of the receiver. (Doc. 28-3 [Pl. Cl. Interv.] at 10; Doc. 28-2 [Baird Dep.] at 52–53.) Plaintiff went to a neighboring office and asked someone to call the police.

At some point during the incident on August 23, Baird told Plaintiff she was fired. (Doc. 28-1 [Pl. Decl.] ¶ 28.)

Baird submitted an employee change form for Plaintiff that day stating "Presumed quit after she walked out she sai [sic]." (Doc. 28-2 [Baird Dep.] at 56; Doc. 18-3.) Baird testified that she would not have allowed Plaintiff to come back to work after August 23, 2016. (Doc. 28-2 [Baird Dep.] at 55.)

---

[6] According to Baird, Baird did not touch Plaintiff's nose with her finger until after Baird stopped Plaintiff's attempt to call the police. In addition to viewing the evidence in the light most favorable to Plaintiff, *see Matsushita Elec.*, 475 U.S. at 587, the Court considers this difference in timing to be immaterial to Defendants' motions.

On August 25, 2016, Plaintiff, through counsel, received a letter from Baird's counsel suggesting she had not been terminated. (Doc. 28-1 [Pl. Decl.] ¶ 29.) Plaintiff tried to determine her employment status through inquiries with the County Finance Department and, later, an email to Baird about whether she was on administrative leave. (*Id.* ¶¶ 29–31; Doc. 18-5.) Plaintiff filled out an Application for Service or Early Retirement Benefits on January 26, 2017. (Doc.18-2.) Plaintiff also filed a workers' compensation action based on the events of August 23, 2016, which she ultimately dismissed. During an interview for the claim on September 28, 2016, Plaintiff stated that Baird had said at one point that she was not going to fire Plaintiff. (Doc. 18-1 at 2.) Later in the interview, Plaintiff stated that on August 23, 2016, after the police arrived, Baird told them to get Plaintiff out of the office because she was fired. (Doc. 28-3 at 11.)

On August 25, 2016, Baird filed a lawsuit against Plaintiff in the Circuit Court for Campbell, County, Tennessee. (Doc. 28-8.) The lawsuit alleged that Plaintiff had been making false allegations of discrimination against Baird as her employer and supervisor; alleged that Plaintiff had "made false statements against [Baird] to otherwise secure payment of funds to which [Plaintiff] is not entitled"; and sought a declaratory judgment on the rights of the parties. (*Id.*) Baird submitted a voluntary dismissal of the action on February 16, 2017, and the action was dismissed on March 9, 2017. (Doc. 28-9.)

Plaintiff filed this action on May 22, 2017. (Doc. 1 [Compl.].) She asserted causes of action against the County under the FMLA, 29 U.S.C. §§ 2601 *et seq.*; the Public Employee Political Freedom Act, Tenn. Code Ann. §§ 8-50-601 *et seq.* (the "PEPFA"); the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 (the "TPPA"); the Tennessee Disability Act, Tenn.

Code Ann. § 8-50-103 (the "TDA"), and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-201 *et seq.* (the "THRA"). She asserted causes of action against Baird individually for malicious prosecution, assault, and intentional infliction of emotional distress.

## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). A factual dispute is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to

provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Each party must properly support its assertions of fact and its responses to another party's assertions of fact. Fed. R. Civ. P. 56(e).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

III.    **DISCUSSION**

The County moves for summary judgment on each of Plaintiff's employment-related claims. (Doc. 16.) The County also moves for summary judgment on Plaintiff's tort claims against Baird in her individual capacity on the grounds that they are barred by the exclusive remedy of workers' compensation. (Doc. 16.) Because Plaintiff's employment claims are directed only against Baird individually and not against the County (Doc. 1 ¶¶ 57, 89, 95), the Court need not address the County's arguments regarding workers' compensation.

Baird, in her individual capacity, moves for summary judgment on Plaintiff's claims for intentional infliction of emotional distress and malicious prosecution. (Doc. 15.) Baird does not expressly move for summary judgment on Plaintiff's assault claim. Baird also moves for judgment on Plaintiff's employment claims on the grounds that Baird was not Plaintiff's employer. (*Id.*) Because Plaintiff's employment claims are directed only against the County and not against Baird individually (Doc. 1 ¶¶ 31, 37, 44, 51, 62, 72, 80), the Court need not address Baird's arguments on the employment claims. Finally, Baird purports to adopt by reference all of the County's arguments, including its argument that the exclusive remedy of workers' compensation bars all of Plaintiff's claims against Baird individually. The Federal Rules of Civil Procedure only authorize adoption by reference of statements in pleadings, not statements in motions. Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."). Because Baird herself has not made this argument, the Court will not address it in detail. The Court will only pause to observe, for the sake of thoroughness, that Baird herself was not Plaintiff's employer, all of Plaintiff's claims against Baird are for intentional torts, and an employee may maintain an action against a coworker for intentional injuries or for injuries caused outside the scope of the coworker's employment. *See Taylor v. Linville*, 656 S.W.2d 368, 370 (Tenn. 1983).

The only federal questions alleged in this lawsuit are Plaintiff's FMLA claims. Because these claims provide the sole basis for federal subject-matter jurisdiction, the Court considers them first.

### A.     FMLA Retaliation and Interference

Plaintiff brings two counts against the County under the FMLA.  First, Plaintiff claims the County retaliated against her in violation of the FMLA by reducing her pay by $5,000 while she was on FMLA leave.  (Doc. 1 [Compl.] ¶¶ 32–34.)  While the County's purported reason for the pay reduction was a reduction in Plaintiff's duties, Plaintiff alleges the only reduction in her duties was the fact that she was then actually on FMLA leave.  (*Id.* ¶ 33.)  Plaintiff asserts the real reason for the reduction was her exercise of her FMLA rights.  (*Id.* ¶ 35.)  Second, Plaintiff claims the County's failure to restore her to a position with equivalent pay on her return from FMLA leave interfered with her FMLA rights.  (*Id.* ¶¶ 38–42.)

The County moves for summary judgment on both of Plaintiff's FMLA claims on the grounds that it would have cut Plaintiff's pay regardless of her FMLA leave because her job duties were reduced.  (Doc. 18 at 7.)  The County points to two pieces of evidence to support this conclusion.  First, it points to the following deposition testimony by Baird:

> Q.     Is the reason that you cut her pay was because she was making mistakes?
> A.     Less duties.

(Doc. 18-8 [Baird Dep.] at 4 (objection omitted).)  But Plaintiff's declaration expressly states the opposite—that she was not performing fewer duties.  (Doc. 28-1 [Pl. Decl.] ¶ 18.)  This is a quintessential dispute of material fact.  The Court therefore need not reach such other issues as Baird's backdating of the pay-reduction form, that the duties to which Baird referred were ones Plaintiff testified she had not been doing at LaFollette but agreed to do with training, or that the refusal lasted at most a single morning, two days after the effective date of the pay reduction.

Second, the County argues another employee, Mary Heatherly, had her pay cut at the same time as Plaintiff. (Doc. 18 at 7.) The County argues this shows the pay cut had nothing to do with Plaintiff's FMLA leave. But the Court agrees with Plaintiff's response: the County's stated reason for Plaintiff's pay reduction was Plaintiff's reduction in duties, and it therefore must stand or fall on its own merits. (*See* Doc. 28 at 20–21.) There was not, for example, an office-wide pay adjustment. The fact that Baird completed a form on June 17, 2016 reducing Heatherly's pay by $5,000 "based on less job performance" (Doc. 18-8 [Baird Dep.] at 2–3; Doc. 18-9) does not insulate the County from Plaintiff's FMLA retaliation claim.[7]

The County also argues it is entitled to judgment on Plaintiff's FMLA claims because Plaintiff was not fired and was never denied FMLA leave. (Doc. 18 at 7.) Plaintiff's FMLA claims are based on the reduction in her pay, not on an allegation that she was terminated or denied leave. The County's arguments on these points are irrelevant.

The Court will **DENY** the County's motion for summary judgment on Plaintiff's FMLA retaliation and interference claims.

## B.    TDA Discrimination, Hostile Work Environment, and Retaliation

Plaintiff brings two counts against the County under the TDA. First, Plaintiff claims the County discriminated against her based on her disabilities in violation of the TDA through Baird's intentional aggravation of the symptoms of Plaintiff's disabilities, by attributing her alleged

---

[7] The Complaint alleged no other employee's pay was reduced at the same time as Plaintiff's. (Doc. 1 ¶ 40.) The Court assumes the County advanced its argument regarding Heatherly's pay reduction largely because of this allegation. This allegation, however, is not necessary to Plaintiff's claim.

mistakes to her disabilities, and by treating her differently than employees without disabilities. (Doc. 1 [Compl.] ¶¶ 63–69.)  Plaintiff points to the cut in her pay, formal discipline against her, her suspension, and her termination, as discriminatory actions.  (*Id.* ¶ 69.)  Plaintiff claims Baird's actions against her caused a hostile work environment.  (*Id.*)  Second, Plaintiff claims the County retaliated against her in violation of the TDA through Baird's reactions to Plaintiff's August 19, 2016 complaint letter alleging disability discrimination and Plaintiff's August 23, 2016 visit to the County Mayor to complain further of disability discrimination.  (*Id.* ¶¶ 75–78.)

The County moves for summary judgment on Plaintiff's TDA claims on two grounds: that it never denied a request for leave from Plaintiff, and that it would have cut Plaintiff's pay regardless of her requests for health-related leave because her job duties were reduced.  (Doc. 18 at 12–13.)  The County's first argument fails to meet the substance of Plaintiff's disability claims, which never allege a leave denial and in fact have nothing to do with leave requests.  (*See* Doc. 1 [Compl.] ¶¶ 61–78; *see also* Doc. 28 [Pl. Resp.] at 24.)  The County's second argument fails for the same reasons discussed above—there is at least a genuine issue of material fact as to the reason for the reduction in Plaintiff's pay.  (*See supra* § III(A).)  The Court will **DENY** the County's motion for summary judgment on Plaintiff's TDA discrimination, hostile work environment, and retaliation claims.

### C.     THRA Discrimination and Retaliation

Plaintiff claims the County discriminated against her based on her age in violation of the THRA.  (Doc. 1 [Compl.] ¶ 81.)  She also claims the County retaliated against her in violation of the THRA through Baird's reactions to Plaintiff's August 19, 2016 complaint letter alleging age

discrimination and Plaintiff's August 23, 2016 visit to the County Mayor to complain further of age discrimination. (*Id.* ¶¶ 83–86.)

The County moves for summary judgment on Plaintiff's THRA claims on two grounds. First, the County argues there is no proof Plaintiff's age was a determining factor in any of Baird's actions. (Doc. 18 at 14.) The County points specifically to Plaintiff's deposition testimony that she was never asked to retire based on her age. (*Id.* (citing Doc. 18-7 at 7).) The County cites no authority that being asked to retire based on one's age is an essential element of all THRA claims, or that not being asked to do so is a complete defense to all THRA claims. The County's argument therefore has minimal legal significance. In addition, the County's argument is not well grounded factually. In context, the testimony from Plaintiff that the County cites is as follows:

> A.  . . . Alene [Baird] kept saying, "You're 60 years old now. You know you want to retire."
> Q.  When did she tell you that?
>       ***
> A.  I don't know exactly when, but she's told me that several times.
>       ***
> Q.  But she never asked you to retire because of your age, did she?
>       ***
> A.  She kept on implying—she kept on implying my age.
> Q.  I asked you: Did she ever ask you to retire because of your age? Yes or no?
> A.  No. She kept talking about my age.

(Doc. 18-7 [Pl. Dep.] at 7.) The Court fails to see the significance of the difference between asking Plaintiff to retire based on her age and suggesting Plaintiff must want to retire based on her age. Plaintiff cites other record evidence, as well: on June 13, 2016, Baird asked Plaintiff why she did not retire and said a younger girl could do Plaintiff's job faster (Doc. 28-1 [Pl. Decl.] ¶ 21); the

person who took over the majority of Plaintiff's job duties was twenty-five years old (Doc. 28-17 [Baird's Interrog. Answers] ¶¶ 16, 14); and Baird attributed Plaintiff's "unbelievable" mistakes to her being old enough to retire (Doc. 28-2 [Baird Dep.] at 62.).  (Doc. 28 at 25.)

Baird's second argument is that Plaintiff cannot show she was subjected to discrimination based on her age, because she has also alleged discrimination and retaliation based on her disabilities, her refusal to participate in illegal activity, and her communications with elected officials.  (Doc. 18 at 13–14.)  Plaintiff responds that asserting alternative legal theories is permissible under Federal Rule of Civil Procedure 8(a)(3).  (Doc. 28 at 9.)  Plaintiff also argues it would be unjust to allow defendants to avoid liability where they act out of multiple illegal motivations.  (*Id.* at 9–10.)  Plaintiff further argues that Baird's illegal motivations changed over time and in response to events like Plaintiff's written complaint of discrimination.  (*Id.* at 10 n.6.)

The County cites no authority stating Plaintiff may not simultaneously assert different causes of action that rest on different theories of illegal discrimination or retaliation.  Lacking any such authority, and with Plaintiff having cited particular materials in the record to support her allegation that Baird was motivated by Plaintiff's age, the Court will **DENY** the County's motion for summary judgment on Plaintiff's THRA discrimination and retaliation claims.

### D.    PEPFA

Plaintiff claims the County violated her rights under the PEPFA through Baird's verbal attacks against Plaintiff following Plaintiff's August 19, 2016 complaint letter to county officials, as well as through Baird's physical assault on and firing of Plaintiff after Plaintiff spoke with the County Mayor on August 23, 2016.  (Doc. 1 [Compl.] ¶¶ 45–49.)  The PEPFA makes it unlawful

"for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official." Tenn. Code Ann. § 8-50-603(a).

The County argues nothing in the record shows Plaintiff was disciplined or discriminated against after she communicated with County officials, let alone because of such communications. (Doc. 18 at 8.) Plaintiff responds that Baird herself admits she called Plaintiff a liar on August 23, 2016 because of Plaintiff's complaints of discrimination against her. (*See* Doc. 28-2 [Baird Dep.] at 59–60.) Plaintiff also points out that Baird's physical assault and firing of Plaintiff followed Plaintiff's complaints to the County Mayor.

The County argues Plaintiff cannot rely on her termination to support a PEPFA claim because she was never, in fact, terminated, but instead chose to retire. (Doc. 18 at 8–9.) The County points to various documents indicating Plaintiff was not fired but was on FMLA or other leave, that she abandoned her job, or that she retired. (Doc. 18 at 2–3 (citing record evidence).) Plaintiff concedes there is evidence in the record that she was not fired. (Doc. 28 at 11.) But Plaintiff also argues there is at least a genuine dispute of fact as to whether she was fired or retired, in that Plaintiff testified in her deposition multiple times that Baird told her she was fired (Doc. 28-10 at 7, 8, 9, 21); Plaintiff stated in her workers' compensation interview that Baird told police to Plaintiff out of the office because she was fired (Doc. 28-3 at 11); Baird submitted an unsigned form to terminate Plaintiff's employment on August 23, 2016, saying Plaintiff was presumed to have quit because she walked out (Doc. 28-2 [Baird Dep.] at 56; Doc. 18-3); and Baird testified that she would not have allowed Plaintiff to return to work after August 23, 2016 (Doc. 28-2 [Baird

Dep.] at 55). The Court agrees that Plaintiff has shown the existence of a genuine issue of material fact as to whether Plaintiff was fired.

Finally, the County argues there is no evidence any adverse actions by Baird were based on Plaintiff's protected communications with officials because Plaintiff says she had already been having problems with Baird for three months before she made her protected communications. (Doc. 18 at 9.) This argument overlooks Baird's own testimony of her reaction to Plaintiff's discrimination complaints. And as Plaintiff argues, Baird never called Plaintiff a liar or a backstabber and never told her she was fired until after Plaintiff made her protected communications. (Doc. 28 at 14–15.) Moreover, as discussed in the preceding section, the County has not cited any authority to show that Plaintiff may not simultaneously allege multiple illegal motivations for discrimination or discipline. (*See supra* § III(C).)

The Court will **DENY** the County's motion for summary judgment on Plaintiff's PEPFA claim.

### E. TPPA

Plaintiff claims the County violated her rights under the TPPA through Baird's intimidation and discriminatory treatment of Plaintiff following Plaintiff's refusal to join Baird's illegal retaliation against Hall for Hall's intention to run against Baird in the next election, culminating in Plaintiff's termination. (Doc. 1 [Compl.] ¶¶ 52–55.) The TPPA states that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). The illegal activity Plaintiff says Baird tried to get her to join is interference with an election or nomination: "It is unlawful for any public

officer or employee to use such person's official position, authority or influence to interfere with an election or nomination for office or directly or indirectly attempt to intimidate, coerce or command any other officer or employee to vote for or against any . . . person . . . ." Tenn. Code Ann. § 2-19-202(a). The intent of this statute is "to prohibit any political intimidation or coercion of any public officer or employee." *Id.* at (b). Plaintiff alleges Baird's attempt to get Plaintiff to blame Hall for the May 26 vehicle registration problem violated Tenn. Code Ann. § 2-19-202 because Baird perceived Hall as an opponent in the next election.

The County moves for summary judgment on Plaintiff's TPPA claim on the grounds that Plaintiff was not fired, and even if she was, she could not prove her termination was based solely on her refusal to violate Tenn. Code Ann. § 2-19-202, because she has alleged other reasons for her termination. (Doc. 18 at 11.) As discussed above, there is a genuine issue of material fact as to whether Plaintiff was fired. (*See supra* § III(D).) Also as discussed above, the County has presented the Court with no grounds to hold Plaintiff cannot pursue more than one theory that requires her to prove causation, or even sole causation, based on different illegal motivations. (*See supra* § III(C).) Plaintiff's TPPA claim therefore survives summary judgment on whether she was terminated for refusing to participate in Baird's activities against Hall.

The County also moves for judgment on Plaintiff's TPPA claim on the grounds that Baird's activities were not actually illegal, because the statute Plaintiff cites only expressly addresses elections and nominations, and Hall never actually sought nomination or election for Baird's office. (Doc. 18 at 11.) The County's argument, carried to its logical extreme, would mean that political interference that came early enough and was effective enough to stop someone from

seeking a nomination in the first place would not be illegal under the statute. Lacking any authority interpreting the statute this way, the Court will not be the first to start such an interpretation. Last, the County points to Plaintiff's deposition testimony that Plaintiff herself does not know if Hall ever planned on running for Baird's office. (*Id.* (citing Doc. 18-7 [Pl. Dep.] at 9.) Plaintiff's personal knowledge of Hall's plans is irrelevant, as Plaintiff testified it was Baird herself who told Plaintiff Hall was planning to run against her. (Doc. 18-7 [Pl. Dep.] at 9.) The Court will **DENY** the County's motion for summary judgment on Plaintiff's TPPA claim.

### F. Intentional Infliction of Emotional Distress

Plaintiff asserts a cause of action for intentional infliction of emotional distress against Baird in her individual capacity. (Doc. 1 [Compl.] ¶¶ 96–98.)

Baird first argues Plaintiff has not shown Baird's conduct was the cause in fact of Plaintiff's injuries. (Doc. 15 at 3.) Plaintiff responds that her deposition supplies such evidence, citing Plaintiff's testimony that the way Baird was treating Plaintiff was causing the stress for which Plaintiff was seeking medical help.[8] (Doc. 27 at 2 (citing Doc. 27-1 [Pl. Dep.] at 1.) Taking the facts and reasonable inferences in Plaintiff's favor, and lacking any legal argument from Baird on

---

[8] Plaintiff also refers to statements in her personnel file about the causation and severity of her anxiety, arguing knowledge of these matters should be imputed to Defendants. Plaintiff does not cite these materials as part of the record before the Court. Regardless of whether other parties have knowledge of evidence, a party opposing summary judgment "must . . . come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao*, 285 F.3d at 424; *see also* Fed. R. Civ. P. 56(c)(1)(A). The Court therefore does not consider Plaintiff's unsupported assertion that there is additional relevant evidence in Plaintiff's personnel file.

why this evidence is not sufficient, the Court concludes Plaintiff has made a sufficient showing on causation to survive summary judgment.

Baird next discusses the law applicable to Tennessee claims for emotional distress. (Doc. 15 at 3–5.) She states that a serious mental injury is required for all claims of negligent infliction of emotional distress[9] and recites the factors to consider in determining whether a plaintiff's mental injury is severe enough to support a cause of action under Tennessee law. She makes no application of these principles to Plaintiff, however. She does not show in what way Plaintiff's proof is deficient or even state that it is deficient—she just states what the law is and moves on to the next section of her brief.

Plaintiff's response points out that Plaintiff has asserted a claim for intentional infliction of emotional distress, not negligent infliction of emotional distress, and identifies the factors and facts she claims support a finding in her favor on serious mental injury, including that she sought medical attention for work-induced stress and suffered impairment in her daily functioning. (Doc. 27 at 2–4.) She also argues a finding of a serious mental injury is appropriate in her case because "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case" (*id.* at 5 (quoting *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 134 (Tenn. 2001)), as shown by Baird's own deposition testimony regarding her treatment of certain employees (*id.*).

---

[9] Plaintiff's claim is for intentional infliction of emotional distress. Both negligent and intentional infliction of emotional distress require proof of a serious mental injury, however. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012).

Baird presumably intends for the Court to find there is no genuine dispute that Plaintiff has not suffered a serious mental injury and then conclude Baird is entitled to judgment as a matter of law on this claim. But it is the moving party who bears the burden of showing there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. A party who asserts "a fact cannot be . . . genuinely disputed must **support the assertion by**: (A) **citing** to particular parts of materials in the record . . . ; or (B) **showing** . . . that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1) (emphasis). Baird's recitation of legal principles has neither cited any materials to show Plaintiff has not suffered a serious mental injury, nor shown— or even stated—that Plaintiff cannot produce admissible evidence to prove she has suffered a serious mental injury.

The Court concludes Baird has not shown there is no genuine issue of material fact as to whether Plaintiff suffered a sufficiently serious mental injury. The Court therefore need not reach Plaintiff's arguments in response. The Court will **DENY** Baird's motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### G. Malicious Prosecution

Plaintiff asserts a cause of action for malicious prosecution against Baird in her individual capacity. (Doc. 1 [Compl.] ¶¶ 9–10.) The elements of malicious prosecution in Tennessee are (1) the defendant brought a lawsuit against the plaintiff without probable cause; (2) the defendant brought the lawsuit with malice; and (3) the lawsuit terminated in favor of the plaintiff. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb v.*

*Allain*, 380 S.W.3d 35 (Tenn. 2012). "[A] voluntary nonsuit without prejudice is not a favorable termination for purposes of a malicious prosecution claim." *Himmelfarb*, 380 S.W.3d at 40.

Baird argues Plaintiff's malicious prosecution claim must fail because Baird's previous litigation against Plaintiff ended with a voluntary dismissal without prejudice. (Doc. 15 at 5; Doc. 15-1.) Plaintiff concedes this fact is fatal to her malicious prosecution claim. (Doc. 27 at 6.)

Plaintiff argues, however, that the factual allegations in her malicious prosecution claim would support a claim for abuse of process, instead. (*Id.* at 6–7.) Plaintiff asks the Court to look to the gravamen of her claim and construe it as a claim for abuse of process rather than one for malicious prosecution.

The elements of abuse of process in Tennessee are (1) an ulterior motive and (2) "an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Givens v. Mulikin*, 75 S.W.3d 383, 400–01 (Tenn. 2002) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999)). The second element of abuse of process distinguishes it from malicious prosecution, in that there must be an improper use of process after the process has been issued, rather than an issuance of process for an improper purpose in the first place. *Bell ex rel. Snyder*, 986 S.W.2d at 555.

Plaintiff's Complaint does not allege any improper use of process. The allegations are directed to Baird's initiation of the action, as is appropriate in a claim for malicious prosecution. (Doc. 1 [Compl.] ¶ 59 (discussing "Baird's reason for filing suit"; alleging "Baird lacked all legal cause . . . for suing" Plaintiff).) The closest the Complaint comes is an allegation that Baird "continued to prosecute" the action after Plaintiff, through counsel, demonstrated it was baseless.

(*Id.*)  But this still does not allege a use (or abuse) of process.  *Cf. Givens*, 75 S.W.3d at 402–03 (holding plaintiff sufficiently alleged second element of abuse of process where defendant had served more than two hundred interrogatories and deposed plaintiff for eight hours on unnecessary and improper subjects, and where defendant had issued seventy discovery subpoenas for medical and other records seeking irrelevant, embarrassing, and privileged information).  Plaintiff cites no authority to support her argument that mere delay in dismissing an improper lawsuit satisfies the second element of an abuse of process claim.  Plaintiff's argument would essentially turn an abuse of process claim into a malicious prosecution claim, without its other elements.  Even assuming it would be appropriate for the Court to construe Plaintiff's malicious prosecution claim as an abuse of process claim at this stage of the litigation, it would be futile to do so because Plaintiff has neither alleged nor shown facts that would satisfy the second element of abuse of process.

The Court will **GRANT** Baird's motion for summary judgment on Plaintiff's malicious prosecution claim.

## IV.  <u>CONCLUSION</u>

The Court will **DENY** the County's motion for summary judgment (Doc. 16).  The Court will **GRANT IN PART and DENY IN PART** Baird's motion for summary judgment in her individual capacity (Doc. 15); the Court will **GRANT** Baird's motion as to Plaintiff's claim for malicious prosecution and **DENY** Baird's motion as to Plaintiff's claim for intentional infliction of emotional distress.  The Court will **DENY AS MOOT** Plaintiff's motion to file a third-party declaration (Doc. 31).

24

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**